OCTOBER AND NOVEMBER TERM, 1881, No. 89.

## Kinnear *versus* Gealy *et al.*

A sale of lands by a debtor is not fraudulent and void as to a creditor having a judgment which is a lien, and may be continued and enforced, though the sale be made for an inadequate consideration and the object expressed at the time be to get the land from under this judgment.

ERROR to the Court of Common Pleas of *Venango County*.

Ejectment, commenced August 7th, 1877, by F. D. Kinnear against Asa W. Gealy, John W Gealy, Nesbit A. M. Gealy, E. I. Agnew, G. H. Nesbit, A. H. Tack, Frank Tack, L. Tack, Theodore Tack, I. E. Dean, S. C. T. Dodd, and John T. Shir-

[Kinnear *v.* Gealy *et al.*]

ley, to recover possession of a tract of one hundred acres of land in Clinton township, Venango County.

Upon the trial in the Court below the following facts appeared :

Both plaintiff and defendants claimed title through William P. McKee, who, in 1851, owned a number of tracts of real estate, including the one in dispute, in Venango County. About this time McKee became insolvent, and all of his real estate which could be found was levied upon by creditors, and sold by the sheriff. It appeared that the tract in dispute was not included in this sale.

In 1848 William P. McKee and James Harris, trading as McKee & Harris, brought suit against Samuel Sloan, in which suit the jury found a verdict for the defendant for $220.10. Judgment was entered on the verdict May 31st 1851.

On the 29th of November, 1853, McKee entered into an agreement under seal, with G. W. Gealy, in which he granted, bargained, and sold the said tract to Gealy, and which provided :

" And the second part (Gealy) doth agree on his part to pay therefor, as soon as a sufficient treasurer's deed can be obtained so as to insure the title to the said premises to the said second part, the sum of $150 currency of the Commonwealth, on the premises or his own residence, in the aforesaid Scrubgrass township, and the said second part to have full possession of said premises from this date with all appurtenances belonging thereto."

Concerning this agreement, McKee, for the defendants, upon cross-examination, testified :

" I think Mr. Gealy brought the article to my house. I would not be certain. The article was signed after it was brought to my house. I am certain that I signed it in my own house the day it was witnessed. . . . I think Mr. Gealy came to see me once before, and we talked about the land in regard to the purchase of it. Mr. Gealy stayed over night with me when the article was signed. I was in debt to Samuel Sloan at the time the article was signed. He got a judgment against me in Venango County Court of $200 and upwards. Mr. Gealy knew about this judgment. We talked about it previous to the signing of the article, at the time I talked of selling the land to him." . . .

Question. Was not the object of the sale to G. W. Gealy to get rid of the payment of this Sloan judgment, and to get this land discharged from the judgment ? . . .

Answer. " Yes, sir." (Witness explains.) " I considered that Sloan owed me about $600, and had sued him in court, but the law cut me out of my cash payments, as the cash was

kept with the store account, and he got judgment against me as above stated, and would rather any person else would get the land than Sloan.    All this was talked over previous to the signing this agreement (Exhibit A.) between me and Gealy.    I don't know that Gealy agreed with me that the Sloan judgment should not be paid.    I never paid the Sloan judgment.    Gealy never paid me the $150 mentioned in Exhibit A., but he paid me the $1 receipted on the contract. . . . . . . As soon as Gealy could get a treasurer's title he was to pay me the $150. . . . . . . 1 supposed that all the property we purchased from Mr. Hughes was sold by the sheriff, until Mr. Gealy told me it was not all included in the sheriff's sale, and what was mentioned in the article was not, and upon receiving this information I made this article marked Exhibit ' A.'    I do not know Mr. Gealy's object in purchasing the land.    He said he had land joining it, and wanted this. . . . Mr. Gealy knew I wanted to get this land out from under the Sloan judgment.    I considered it unjust, and did not want to pay it.    Mr. Gealy knew this before and at the time he signed the agreement, marked Exhibit A."

Gealy entered into possession and made improvements. The land was sold by the treasurer of the county, August 26th, 1856, for the unpaid taxes of 1855, to John Gealy, who assigned the treasurer's deed, August 23d, 1858, to George W. Gealy.    The latter remained in possession until his death, March 31st, 1877, when his title became vested in the defendants.    The lien of the Sloan judgment against McKee and Harris was permitted to expire.    A *sci. fa.* to revive it was issued January 8th, 1857, which was returned *nihil.* An *alias sci. fa.* was issued February 5th, 1857, upon which judgment was obtained, and the damages assessed at $302.80 and costs.    Under a *fi. fa.* upon this judgment, levy was made, *inter alia*, upon the land in dispute, and it was sold by the sheriff to F. D. Kinnear, the plaintiff, and a deed executed November 21st, 1857, and duly recorded.

There was much other evidence in the case, and numerous assignments of error, which, under the view the Court took of the case are immaterial.

On behalf of the plaintiff, it was contended that the agreement of November 29th, 1853, between McKee and Gealy, being intended to hinder, delay, and defraud creditors, was void under the statute of 13 Elizabeth.

November 20th, 1880, verdict for defendants, upon which, subsequently, judgment.

The plaintiff took out a writ of error.

[Moody's Appeal.]

*J. H. Osmer* and *C. Heydrick* for plaintiff in error.

*Charles W. Mackey* for defendants in error.

At the time of the purchase by Gealy, Sloan *et al.* had a judgment which was a valid and subsisting lien upon the land in dispute, and it continued to be a lien for upwards of two years. Gealy, therefore, purchased subject to the lien. It could not have been the intention of McKee to hinder, delay, or defraud Sloan, because he told Gealy about the judgment, and Gealy knew that it was a lien upon McKee's title. If the lien had been kept alive, the land could not have been wrested from under it. It was the fault of Sloan or his attorney.

PER CURIAM: There was no evidence to submit to the jury of any fraud on Sloan in the sale by McKee to Gealy. Sloan had a judgment against McKee, which was at the time a lien on the land, on which he could proceed and sell it as well after as before the article with Gealy. How, then, was the contract or conveyance to Gealy a fraud on Sloan? It could not have hindered, defrauded, or delayed him. Sloan suffered the lien of his judgment to expire without reviving it. Gealy bought subject to the lien. We think this disposes of the whole case, and renders an examination of the other questions raised by the several assignments of error unnecessary.

Judgment affirmed.